HON. FRANK J. ROGERS Commissioner, Division of Criminal Justice Services
HON. BERNARD SHAPIRO Executive Director, Board of Social Welfare
This is in reply to the recent letter of Commissioner Rogers in which he requested my opinion as to whether the State Board of Social Welfare has legal authority to approve the physical facility and the certificate of incorporation of a not-for-profit corporation to be formed for the purpose of operating, with federal funds, a multi-service halfway house residential facility for adult female ex-offenders and their children.
The State Board of Social Welfare has informed us that it is agreeable that there be an opinion of the Attorney General of the issue upon the basis of Commissioner Roger's letter, although the Board has taken the position that it does not have legal authority to approve a combined child care/adult care facility.
Under the provisions of section 2 of Article XVII of the State Constitution, the State Board of Social Welfare has authority to visit and inspect:
 "* * * all public and private institutions, whether state, county, municipal, incorporated or not incorporated, which are in receipt of public funds and which are of a charitable, eleemosynary, correctional or reformatory character, including all reformatories for juveniles and institutions or agencies exercising custody of dependent, neglected or delinquent children, but excepting state institutions for the education and support of the blind, the deaf and the dumb, and excepting also such institutions as are hereinafter made subject to the visitation and inspection of the department of mental hygiene or the state commission of correction * * *."
The foregoing constitutional provision has been implemented verbatim by paragraph (b) of subdivision (1) of section 750 of the Executive Law. A 1948 Attorney General's opinion summarized the extent of the Board's power of visitation and inspection as follows (1948 Op. Atty. Gen., at p. 248):
 "* * * This power of visitation and inspection includes as a necessary corollary the authority to establish and enforce minimum standards of maintenance and operation in the institutions affected. The institutions include all public and private institutions, whether state, county, municipal, incorporated or unincorporated, which are in receipt of public funds and are of a charitable, eleemosynary, correctional or reformatory character except for certain institutions which are supervised by the Department of Education, the Department of Mental Hygiene or the State Commissioner of Correction."
Section 759 of the Executive Law specifically extends to the State Board of Social Welfare the authority to approve physical facilities and issue operating certificates to institutions subject to its visitation, inspection and supervision. It is clear that a residential facility which provides care to female ex-offenders and their children with federal funds is a charitable institution within the meaning of the State Constitution (Peo. v. New York Soc. Prev. Cruelty to Children, 161 N.Y. 233), and as such is subject to visitation, inspection and supervision by the State Board of Social Welfare. It is my opinion, therefore, that the State Board of Social Welfare has the authority to approve the physical facility of such an institution pursuant to section 759 of the Executive Law.
The State Board of Social Welfare's authority to approve certificates of incorporation is derived from section 404(b) of the Not-For-Profit Corporation Law and section 757 of the Executive Law. Where required, Board approval is a condition precedent to the filing of a certificate of incorporation by the Secretary of State. If such approval is not required, it follows that the Secretary of State may file a certificate of incorporation which otherwise meets the requirements of law. However, the Legislature has required through section 757 of the Executive Law that the Board approve a certificate of incorporation of a proposed corporation "* * * which includes among its corporate purposes the care of destitute, delinquent, abandoned, neglected or dependent children; * * * the establishment or operation of any home * * *, or institution for * * * indigent persons * * *, or two or more ofsuch purposes * * *" (emphasis added). It is implicit that a multi-service halfway house residential facility for adult female ex-offenders and their children would include among its corporate purposes the care of destitute or dependent children, and the establishment and operation of a home or institution for indigent persons.
It is my opinion that in order to protect persons who are included within the statutory classifications, the Legislature intended that certificates of incorporation which include one or more of the statutory purposes set forth in section 757 of the Executive Law receive State Board of Social Welfare approval as a condition precedent to filing by the Secretary of State.
I conclude, therefore, that the State Board of Social Welfare has the legal authority to approve the physical facility and the certificate of incorporation of a not-for-profit corporation to be formed for the purpose of operating, with federal funds, a multi-service halfway house residential facility for adult female ex-offenders and their children.